# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO HERNANDEZ, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BURRTEC WASTE & RECYCLING SERVICES, LLC, a California limited liability company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 5:21-cv-01490-JWH-SP<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Before the Court is the Motion for Order Granting Final Approval of Class Action Settlement and Entering Judgment filed by Plaintiff Francisco Hernandez (the "Motion"). Defendant Burrtec Waste and Recycling Services, LLC does not oppose the Motion. Because the settlement is fundamentally fair, reasonable, and adequate, and the fee request is reasonable and well supported, the Court **GRANTS** the Motion and **APPROVES** the settlement.

On January 10, 2023, the Court granted preliminary approval of a proposed classwide settlement. [ECF No. 32.] That Order:

- granted preliminary approval of a settlement in the amount of $83,300, subject to an escalator provision;
- granted conditional certification of a class of all persons who were who authorized or were the subject of a consumer report or background check procured, or caused to be procured, for employment purposes by Defendant Burrtec Waste and Recycling Services, LLC, at any time during the period from May 21, 2016, through January 10, 2023;
- approved the class notice;
- appointed James Hawkins APLC as Class Counsel;
- appointed Plaintiff Francisco Hernandez as the Class Representative;
- appointed CPT Group, Inc. as the Settlement Administrator; and
- set a hearing on a motion for final approval.

Plaintiff now moves for final approval of the proposed settlement and for an award of attorneys' fees, costs and expenses, class representative enhancement payments, and settlement administrator expenses. The Court conducted a final fairness hearing on August 8, 2023, to determine whether the class settlement should be granted final approval as "fair, adequate, and reasonable" pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and to allow all proposed settlement class members an opportunity to comment on the settlement.

# I. SETTLEMENT TERMS

The pertinent terms of the parties' Class Action Settlement Agreement (the "Settlement Agreement") are as follows:

## A. Class Definition

The Court conditionally certified the following Class for settlement purposes:

> Employees and/or job applicants in the United States, from May 21, 2016 through January 10, 2023 ("Class Period"), who were authorized or were the subject of a consumer report or background check procured, or caused to be procured, for employment purposes by Defendant Burrtec Waste and Recycling Services, LLC, or its affiliates.

## B. Gross Settlement Amount

Defendant agreed to pay a non-reversionary Gross Settlement Amount of $83,300 in full satisfaction of the claims described in the Settlement Agreement, subject to an escalator provision. (Settlement Agreement ¶¶ 20 & 43.) The Net Settlement Amount is the maximum amount available for distribution to Class Members, after deduction of attorneys' fees and costs, the class representative enhancement payment, and settlement administration expenses. (*Id.* ¶ 22.) Each Class Member who did not opt out of the Settlement will receive an equal share of the New Settlement Amount as an Individual Settlement Payment, based on the total number of participating class members. (*Id.* ¶ 48.) Any amounts attributable to settlement checks returned as undeliverable or remaining uncashed for more than 180 calendar days after issuance with be sent to the California Controller's Office Unclaimed Property Fund. (*Id.* ¶¶ 50 & 51(K).)

**C.     Release of Claims**

The Settlement Agreement provides for the following releases of claims applicable to all class and/or subclass members:

> "Released Claims" means the claims released by each Plaintiff and each Class Member who does not timely opt out of the Settlement, on behalf of themselves, their heirs, spouses, executors, administrators, attorneys, agents, and assigns, which are "any and all claims of any nature and description whatsoever, arising from, or related to, the claims that are alleged in the Action that could have been asserted under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ('FCRA'), the California Investigative Consumer Reporting Agencies Act ('ICRAA'), the California Consumer Credit Reporting Agencies Act, and/or the California Unfair Competition Law, and/or equivalent or corresponding state or local laws anywhere in the United States. This release shall discharge all claims from statutory, compensatory, actual damages, putative damages, restitution, declaratory, injunctive relief, and equitable relief, and attorneys' fees and expenses, arising from or related to background checks, consumer reports, and/or investigative consumer report, or authorizations, releases, or disclosures for such reports, as ordered by Released Parties during the Class Period.

(*Id.* ¶ 27.)

Further, "Released Parties" means:

> [Defendant] Burrtec Waste & Recycling Services, LLC, any predecessors and successors in interest, any current or former parent corporations, sister companies, affiliated or related parties, joint employers, co-employers, customers, subsidiary corporations, and assigns, companies acquiring any or all of the foregoing entities'

assets or capital stock, current or former owners, officers, directors, shareholders, agents, representatives, and employees of the foregoing entities, and insurers and attorneys of any of the foregoing persons or entities.

(*Id.* ¶ 28.)

The Settlement Agreement also provides for a general release of all claims, known and unknown, by Plaintiff Francisco Hernandez. (*Id.* ¶ 27.)

### D. Attorneys' Fees and Costs, Class Representative Enhancement Payment, and Settlement Administration Expenses

The Settlement Agreement allows Plaintiff's counsel to request attorneys' fees of up to $31,850, litigation costs and expenses of up to $7,500, and a class representative enhancement payment of $4,000 to Plaintiff Hernandez. (*Id.* ¶¶ 49(A)-(B).) Defendant agrees not to oppose any of those requests. (*Id.*) Under the Settlement Agreement, the Settlement Administrator, CPT Group, Inc., was to be paid for the reasonable fees and costs of administering the settlement up to $10,000. (*Id.* ¶ 429(C).) Because the actual class size to which the notice was distributed was 14.7% greater than that represented at the time of preliminary approval, and because Class Counsel's costs were lower than anticipated, an increased amount of $11,500 is approved to the Settlement Administrator. These amounts will be deducted from the Gross Settlement Amount, and the remaining Net Settlement Amount will be distributed among the class members. (*Id.* ¶ 49(D).)

## II. ANALYSIS

### A. Motion for Final Approval

#### 1. Legal Standards

Rule 23(e) requires a district court's approval in order for any "claims, issues, or defenses of a certified class" to be "settled, voluntarily dismissed, or compromised . . . ." "The initial decision to approve or reject a settlement

proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In making this decision, the Court must consider "whether the settlement is fundamentally fair, adequate and reasonable." *Id.* If the settlement will bind class members, Rule 23(e)(2) requires the Court to hold a hearing. Where the class is certified by stipulation of the parties for settlement purposes only, the Court must still examine, and indeed give "heightened[] attention" to, the question of whether that stipulated class meets the requirements for certification under Rules 23(a) and (b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997).

### 2. Class Certification

As discussed above, when confronted with a request for settlement-only class certification, the Court must determine whether the class is properly certified under Rule 23(a) and Rule 23(b) before turning to whether the settlement is fundamentally fair, reasonable, and adequate as required by Rule 23(e).

#### a. Rule 23(a)

To certify a class under Rule 23(a), the Court must find that there is (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

##### i. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." In deciding whether the numerosity requirement is met, courts must decide whether, without the formation of a class, "potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). Here, the class consists of 273 individuals employed in California by Defendant, thus satisfying the numerosity requirement.

### ii. Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Plaintiff alleges that Defendant applied uniform policies to all California applicants and employees regarding background checks, authorizations, and disclosures. Thus, the commonality requirement is met.

### iii. Typicality

The claims of the representative parties also must be typical of the claims of the entire class. Fed. R. Civ. P. 23(a)(3). This rule embodies "permissive standards"—the claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Because the claims of Plaintiff and the Class all arise from the same policies and practices, the typicality requirement is met here.

### iv. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Court must decide (1) whether Plaintiff and their counsel have conflicts of interest with other class members; and (2) whether Plaintiff and their counsel have vigorously prosecuted the case for the entire class. *Hanlon*, 150 F.3d at 1020. There is no indication that Plaintiff and his counsel have any interests in conflict with the class. With the exception of the class representative enhancement payment, Plaintiff will be compensated in the exact same manner as the other class members. There is also no indication that class counsel has not vigorously prosecuted the case on behalf of the class. The only compensation class counsel will receive is the proposed attorneys' fees and costs.

In sum, Plaintiff has met the requirements of Rule 23(a).

### b. Rule 23(b)

The Court must also decide if Plaintiff has met one of the requirements of Rule 23(b). Rule 23(b)(3), the subdivision most commonly used, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" of adjudication.

#### i. Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal citations omitted). "[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Though the predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement, *Amchem*, 521 U.S. at 624, the Court finds that common issues predominate here. Plaintiff notes that the common issues—Defendant's policies and practices regarding background checks of applicants and employees—predominate over any individual issues that may arise, and among other common legal questions, Defendant's alleged failure to properly disclose and receive authorization, is primarily a legal question.

#### ii. Superiority

The class action must also be superior to other methods available for adjudication. *Zinser v. Accuflix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). To assess superiority, courts look to class members' interests in individually controlling the case, the extent and nature of existing litigation by

class members, and the desirability of concentrating the litigation on the claims in the forum, among other factors. Fed. R. Civ. P. 23(b)(3). Here, there is no indication that individual members want to control the case, and concentrating the claims in this forum is desirable. Thus, the superiority requirement is met.

In sum, Plaintiff have met the requirements of Rule 23(b). As a result, the class is properly certified for settlement purposes.

### c. Rule 23(e)

After ensuring that the proposed class satisfies Rule 23(a) and Rule 23(b), the Court must ensure that the settlement satisfies Rule 23(e). Among other requirements, Rule 23(e) demands that notice be directed in a reasonable manner[1] and the settlement be fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To make that latter determination, the Court considers a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Officers for Justice*, 688 F.2d at 624. "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Id.* While the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," *Hanlon*, 150

---

[1] The Court finds that the notice provided to the Class satisfied the Court's preliminary approval order, Rule 23(e), and due process. It (1) fully and accurately informed Class Members about the lawsuit and settlement; (2) provided sufficient information so that Class Members could decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the Settlement; (3) provided procedures for Class Members to file written objections to the proposed Settlement, to appear at the hearing, and to state objections to the proposed Settlement; and (4) provided the time, date, and place of the final fairness hearing.

F.3d at 1026, the question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

After considering the relevant factors and case history, the Court finds that the Settlement in this case meets the requisite standards.

As an initial matter, there is no evidence of collusion, and indeed, "no basis to conclude that the negotiations were anything other than a good faith, arms-length attempt by experienced and informed counsel to resolve this matter through compromise." *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013). The Settlement Agreement comes after extensive investigation, research, discovery, and analysis of damages which informed the parties engaged serious and arm's-length negotiations during two separate Settlement Conferences with Magistrate Judge Sheri Pym. (Settlement Agreement ¶ 81.) Moreover, the attorneys involved are experienced in employment and consumer class action cases. As for the Settlement itself, the Court finds that it is fair, reasonable, and adequate.

First and foremost, the amount offered in Settlement strikes the Court as appropriate. Defendant agreed to pay a non-reversionary Gross Settlement Amount of $95,550, after the escalator provision was triggered. After all proposed deductions, the Net Settlement Amount will be approximately $40,700. From the Net Settlement Amount, the 273 participating Class Members will receive an estimated $149.08 each. In light of the risks Plaintiff would face if the case progressed, such as the risk of an adverse ruling on class certification, or the possibility of an unfavorable or less favorable result at trial or on appeal, the Court finds the amount offered appropriate. Furthermore, if this action does not settle now, both parties will face the prospect of lengthy litigation and significant expense in taking the case to trial. Given the issues involved, appellate proceedings are also possible.

Finally, class members have resoundingly approved the Settlement. The Settlement Administrator provided the best practicable notice of the settlement to the 273 Class Members. Of the 273 class members, none objected to or requested exclusion from the settlement.

In sum, the Court finds that the settlement satisfies the requirements of Rule 23(e). As a result, the Court grants final approval of the settlement.

## B. Motion for Attorneys' Fees and Costs

Plaintiff's counsel, James Hawkins APLC, requests $31,850 in attorneys' fees, which is one-third or 33-1/3% of the Gross Settlement Amount, and an additional $5,991.91 in litigation costs. Further, Plaintiff Francisco Hernandez requests a class representative enhancement payment of $4,000.

Finally, Plaintiff seeks payment of $11,500 to CPT Group, Inc., the appointed Settlement Administrator, to cover the cost of completing the administration of the settlement.

### 1. Attorneys' Fees and Costs

While attorneys' fees and costs may be awarded in a class action where authorized by the parties' Settlement Agreement, Fed. R. Civ. P. 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

#### a. Attorney's Fees

##### i. California Law

Under California law, which applies here, *see Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995), attorneys' fees in class action cases may be calculated in one of two ways: the percentage method (a percentage of the common fund or settlement value) or the lodestar-multiplier method (reasonable hours spent multiplied by reasonable hourly rate adjusted to account for factors such as the risks taken and results achieved). *See Laffitte v. Robert*

*Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). "[T]rial courts have discretion to conduct a lodestar cross-check on a percentage fee" or they may "use other means to evaluate the reasonableness of a requested percentage fee." *Id.* at 506. Class counsel seeks one-third of the common fund Gross Settlement Amount, which would result in a fee award of $31,850. "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (approving a fee award of one-third of the $15,150,000 settlement fund in a class action settlement); *see Laffitte*, 1 Cal. 5th at 506 (approving a fee award of one-third of the gross settlement amount in a wage and hour class action settlement); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent." *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013). Here, the results achieved after extensive work by the parties and in light of the risk of no recovery for the class or counsel justify the award of attorneys' fees. In *Laffitte*, the California Supreme Court affirmed a one-third attorneys' fee award in a wage and hour class action that involved, among other things, extensive discovery, motions for summary judgment, a class certification motion, a motion for reconsideration, and two full-day mediations. *See Laffitte v. Robert Half Int'l Inc.*, 180 Cal. Rptr. 3d 136, 140 (2014), *aff'd*, 1 Cal. 5th at 506. The trial court considered "the risk, expense, complexity and likely duration of further litigation; the risk of maintaining a class action status throughout trial; the extent of discovery completed; the experience and views of counsel; and the views of the class members." *Id.* at 142. In this case, the parties conducted exhaustive informal discovery, and participated in two settlement conferences with

Magistrate Judge Sheri Pym. In a frank assessment of the merits of the case, Plaintiff recognized that "[p]roceeding with litigation would impose significant risk of no recovery." Class counsel undertook that risk on a contingent basis. Achieving a $95,550 settlement that will provide immediate cash benefit to all Class Members in the face of these risks merits the requested one-third fee. Under the circumstances of this case, the requested fees are reasonable.

### ii. Ninth Circuit Law

Plaintiff also argues that the fee request is reasonable under Ninth Circuit precedent. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. The Ninth Circuit has adopted a benchmark of 25% of the total settlement, "which [the court] can then adjust upward or downward to fit the individual circumstances of this case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). Having decided to apply the percentage-of-recovery common fund doctrine, the Court adopts the Ninth Circuit's 25% benchmark rate as its starting point. But the benchmark rate "must be supported by findings that take into account all of the circumstances of the case," *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002), and the Court, therefore, also considers a handful of other relevant factors in considering the reasonableness of Plaintiff's request, including: (1) the results achieved; (2) the risk of litigation; (3) the benefits generated beyond the cash settlement fund; (4) the contingent nature of the fee and the financial burden carried; and (5) awards in similar cases. *Id.* at 1048–50. "District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case." *Beaver*, 2017 WL 4310707, at *10 (listing cases within the Ninth Circuit that approved a fee award of one-third the common fund). Plaintiff argues that the payment of

$149.08 to each Class Member far exceeds that which is typical for FCRA and ICRA class actions, among other factors, support an upward departure from the Ninth Circuit 25% benchmark fee.

First, class counsel obtained $95,500 for the Class, without reversion of any funds to Defendant. Accordingly, the results achieved favor an upward adjustment from the 25% benchmark to a fee of 33-1/3% of the common fund.

Second, as discussed above, Class Counsel litigated this case on a contingency basis, risking receiving zero compensation for three years of work and out-of-pocket costs. The defenses asserted by Defendant and the risk of adverse rulings on the motion for class certification still present risk of no recovery for the class and counsel. Thus, the risk of litigation and the contingent nature of the fee support an upward adjustment.

Third, the requested amount is reasonable when cross-checked against the lodestar multiplier method. Counsel represents that they have spent more than 130 hours in the prosecution of this action, for a lodestar of around $80,000 (hours spent multiplied by a reasonable hourly rate for the region and attorney experience). Under the lodestar approach, the requested fee is less than half of the lodestar, and thus no multiplier is necessary.

Fourth, the amount requested is reasonable under the circumstances and in line with awards in similar cases. *See, e.g.*, *Karapetyan v. ABM Indus.*, 2015 U.S. Dist. LEXIS 24210 (C.D. Cal. Sept. 7, 2017) (awarding 33-1/3% in $5,000,000 wage and hour class action); *Aguirre v. Genesis Logistics, Inc.*, 2014 U.S. Dist. LEXIS 184617 (C.D. Cal. Nov. 29, 2017) (awarding 33-1/3% in $7,000,000 wage and hour class action); *Grillo v. Key Energy Services, LLC*, 2017 U.S. Dist. LEXIS 42682 (C.D. Cal. Oct. 13, 2017) (awarding 33-1/3% in $3,000,000 wage and hour class action); *Shiferaw v. Sunrise Senior Living Management, Inc.*, 2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Jul. 17, 2017) (awarding 33-1/3% in $2,180,000 wage and hour class action). Accordingly, the

Court grants Plaintiff's request for a fee award of one-third of the Gross Settlement Amount.

### b. Litigation Costs

Courts have recognized that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (quotation omitted). Plaintiff has represented to the Court that class counsel has incurred litigation costs in the amount of $5,991.91. The Court also notes that the amount requested is less than the $7,500 cap set by the Settlement Agreement for litigation costs. Because the Court concludes that an award of $5,991.91 in litigation costs is reasonable, the Court grants Plaintiff's request.

### 2. Class Representative Enhancement Payment

Plaintiff Francisco Hernandez also requests a class representative service payment of $4,000 for his commitment to prosecuting this Action, his efforts, risks undertaken for the payment of attorneys' fees and costs if the Action had been lost, general release of all claims arising from his employment, potential stigma upon future employment opportunities for having sued a former employer, as well as the substantial recoveries for every Class Member, and benefits to current and future employees. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *8 (S.D. Cal. Nov. 14, 2013). "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class

representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Id.* Accordingly, the Court grants Plaintiff's request.

### 3. Settlement Administrator Expenses

Plaintiff's request of $11,500 for the Settlement Administrator, CPT Group, Inc., is reasonable considering the documentation provided by the Settlement Administrator outlining the expenses already incurred and estimated costs to finish administration of the Settlement Agreement. The Court also notes that while the amount requested is greater than the preliminarily approved cap of $10,000 set by the Settlement Agreement for administration costs, the class size to which CPT Group actually delivered the Class Notice and which it will administer the payments to is 14.7% larger than the class size represented at the time of settlement and preliminary approval, and thus an increased award to the Settlement Administrator is reasonable and justified. Accordingly, the Court grants Plaintiff's request.

### 4. Compliance Hearing

The Court **SETS** a Compliance Hearing for February 16, 2024, at 11:00 a.m. The Court **DIRECTS** the Settlement Administrator to file a Status Report by February 2, 2024.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Final Approval of the Class Action Settlement and for Approval of Class Counsel's Attorneys' Fees, Costs, and Enhancement Payment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 21, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE